UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

L. S.,[1]                                          )
                                                   )
                    Plaintiff,                     )
                                                   )
            v.                                     )        No. 1:25-cv-01125-MG-SEB
                                                   )
FRANK J. BISIGNANO Commissioner of The             )
Social Security Administration,                    )
                                                   )
                    Defendant.                     )

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

On December 20, 2022, an application for supplemental security income was filed on behalf of LS, a third grader at the time. [Filing No. 9-2 at 18.] The application alleged the disability onset date as September 1, 2019. [Filing No. 9-2 at 18.] Following denials at the initial and reconsideration levels, a written request for a hearing was submitted. [Filing No. 9-2 at 18.] On January 9, 2024, the Administrative Law Judge ("ALJ") held a telephonic hearing. [Filing No. 9-2 at 18.] About two-and-a-half months later, the ALJ issued a decision denying the claimant benefits, [Filing No. 9-2 at 25], and on April 10, 2025, the Appeals Council denied the claimant's request for review. [Filing No. 9-2 at 2.] For the reasons that follow, the ALJ's decision is **AFFIRMED**.

I.      **Legal Standard**

A child is disabled within the meaning of the Social Security Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period

---

[1] To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security review opinions.

1

of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security Administration ("SSA") applies a sequential three-step test for determining whether a child claimant is disabled. Under this test, the ALJ must evaluate the following in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; and (3) if so, whether the impairment meets, equals or functionally equals an impairment listed in SSA regulations as being presumptively disabling. 20 C.F.R. § 416.924; *see L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1150 (7th Cir. 2019); *see McCavitt v. Kijakazi*, 6 F.4th 692, 693 (7th Cir. 2021) (observing that because the disability analysis for children is not work-focused, administrative officials instead ask "whether the child's limitations meet one of the many listed categories of disability or are functionally equivalent to one of them.").

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standard, and that substantial evidence exists for the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). "Although this Court reviews the record as a whole," the Court does not "substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Id.* Instead, the Court "determine[s] whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). To create a logical bridge, the ALJ must meet the "minimal articulation requirements" in reaching their decision. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."); *see Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (explaining the court reviews the ALJ's decision holistically).

## II.    Factual Background

The ALJ issued a written decision on March 28, 2024, in which she found that LS was not disabled. [Filing No. 9-2 at 25.] The ALJ's decision tracked the three-step sequential evaluation process which is used to determine whether a claimant under the age of 18 is disabled. *See* 20 CFR 416.924(a). First, the ALJ found that LS had "not engaged in substantial gainful activity since December 20, 2022, the application date[.]" [Filing No. 9-2 at 19.] Next, the ALJ decided LS had "the following severe impairments: attention-deficit hyperactivity disorder (ADHD), personality disorder, and oppositional defiance disorder (ODD) (20 CFR 416.924(c))." [Filing No. 9-2 at 19.] The ALJ then concluded that LS "d[id] not have an impairment or combination of impairments that" that either "me[t] or medically equal[ed] the severity of one of the listed impairments," or "an impairment or combination of impairments that functionally equal[ed] the severity of the listings[.]" [Filing No. 9-2 at 19–20.] As a result, the ALJ determined that LS had "not been disabled, as defined in the Social Security Act, since December 20, 2022, the date the application was filed[.]" [Filing No. 9-2 at 25.]

## III.    Discussion

LS' brief places one question at issue: Whether the ALJ erred by failing to adopt, or explain her reasoning for not adopting, anger-related limitations supported by a teacher questionnaire. LS' teacher at the time, Ms. Slaughter, responded to a teacher questionnaire on April 11, 2023. [Filing No. 9-6 at 26.] The questionnaire reflected the six domains of functioning set forth in the regulations. 20 C.F.R. § 416.926a(b)(1). Of these six domains, Ms. Slaughter indicated that LS had problems functioning in the following four: (1) acquiring and using information; (2) attending and completing tasks, (3) interacting and relating with others, and (4) caring for herself. [Filing No. 9-6 at 27–31.] Regarding the first category, Ms. Slaughter explained that LS did not like working

independently and would refuse to work unless she received one-on-one help. [Filing No. 9-6 at 27.] If LS was not accommodated, she would pout until she got bored, at which point she would do "what [was] expected from her." [Filing No. 9-6 at 27.] Regarding her ability to attend and complete tasks, Ms. Slaughter described LS as prone to "struggle[ing] with new topics." [Filing No. 9-6 at 28.] Although this challenge made LS frustrated and defiant, Ms. Slaughter said LS would relax with the help of calming strategies and assistance from adults. [Filing No. 9-6 at 28.] Ms. Slaughter also documented LS as having difficulty interacting with others. LS demonstrated non-compliance regularly, was removed from class three times, and was restrained twice. [Filing No. 9-6 at 29.] Last, in the checkbox section under caring for oneself, Ms. Slaughter indicated that LS had up to a serious problem caring for herself but did not provide further explanation. [Filing No. 9-6 at 31.]

A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a) and (d). Here, the ALJ concluded that LS had a "less than a marked limitation" in acquiring and using information, attending and completing tasks, interacting and relating with others, and ability to care for herself. [Filing No. 9-2 at 21.] LS contends the ALJ erred by doing so, as Ms. Slaughter's questionnaires indicated that LS had obvious problems, serious problems, and very serious problems in these domains. *See* [Filing No. 9-6 at 29–30] (teacher questionnaire included the following rating key: (1) no problem; (2) a slight problem; (3) an obvious problem; (4) a serious problem; (5) a very serious problem). According to LS, a "serious problem" correlates with a "marked limitation," and a "very serious problem" correlates with an extreme limitation. [Filing No. 14 at 10.] No legal authority was cited to support this argument.

The text of the relevant regulations provides helpful insight: A marked limitation reflects "an impairment(s) [that] interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An extreme limitation reflects "an impairment(s) [that] interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." § 416.926a(e)(3). An ALJ considers "all of the relevant information in [the child's] case record when [] decid[ing] whether [the child's] medically determinable impairment(s) results in a 'marked' or 'extreme' limitation in this domain." § 416.926a(g)-(i). The regulation does not state that a "serious problem" is akin to a "marked limitation" finding, or that a "very serious problem" is akin to an "extreme limitation" finding. *But see Tylecia M. ex rel. C.O. v. O'Malley*, No. 21-cv-2392, 2024 WL 1050177, at *5 (N.D. Ill. Mar. 11, 2024) (noting that some courts interpret a "serious problem" rating, "*along with other evidence*," to "*support* a marked limitation") (emphases added).[2]

Even if the "most natural mapping" is that a "'marked limitation' is equivalent to a 'serious problem,'" a teacher's indication of a "serious problem" does not *obligate* an ALJ find a "marked limitation" in that domain. *Rexanne Z. o/b/o C.M. v. Saul*, No. 18-cv-50408, 2020 WL 2061564, at *3 (N.D. Ill. Apr. 29, 2020). Rather, an ALJ is obligated to *confront* evidence that does not support their conclusion and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Putting this sentiment into practice, where, as here, an ALJ partially discredits a teacher questionnaire that could support a "marked limitation" or "extreme limitation" finding, the ALJ must explain their reasoning for doing so. *See Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 700 (7th Cir. 2009) (remand appropriate where "the ALJ failed to explain why he did not credit portions

---

[2] There is an out-of-circuit case in which a district court reasoned that "the regulations seem[ed] to indicate that [] very serious problems would be equivalent to extreme limitations while serious problems would be equivalent to marked limitations." *Bishop o/b/o K.M.B. v. Commissioner of Social Security*, 247 Soc. Sec. Rep. Serv. 439, 2017 WL 4512163 (N.D. N.Y. 2017).

of the record that were favorable to LG, including the teachers' reports that found LG had serious or obvious problems in this domain"). According to LS, the ALJ failed to provide logically and factually accurate explanations to support her conclusions that LS had "no more than a less than a marked limitation" in the four domains at issue. [Filing No. 9-2 at 22–23.]

The Court turns first to the ALJ's discussion of LS' ability to acquire and use information. The ALJ reiterated Ms. Slaughter's notation of a "no problem to an obvious problem" in this area and summarized LS' need for on-on-one help, as described by Ms. Slaughter. [Filing No. 9-2 at 22.] "Despite this," the ALJ stated, LS' "school records between 2023 and 2024 show that [LS] earned one D, one C, and five Bs." [Filing No. 9-2 at 22.] Additionally, the ALJ cited testimony from LS' mother, who stated that LS' grades had improved after she transitioned to small classrooms in May 2023. [Filing No. 9-2 at 22.] For these reasons, the ALJ concluded LS had "no more than a less than a marked limitation in this area." [Filing No. 9-2 at 22.]

As required, the ALJ did more than merely summarize the evidence. *Cf Davis ex rel. A.L. v. Berryhill*, No. 17-c-2190, 2018 WL 3463280, at *5 (N.D. Ill. July 18, 2018) (remanding case where the ALJ merely summarized the teacher questionnaires). Immediately after summarizing Ms. Slaughter's notations and comments, the ALJ addressed LS' recent academic performance, as well as the changes in her academic setting which supported the ALJ's conclusion. Elsewhere in her decision, the ALJ analyzed the opinion of a state agency consultant, Amy Johnson, Ph.D., who found that LS had no limitation in her ability to acquire and use information.[3] [Filing No. 9-2 at 24; Filing No. 9-3 at 4.] The ALJ described this finding as "somewhat persuasive," as it was not "fully consistent with [LS'] special education and need" for an Individualized Education Program ("IEP"). [Filing No. 9-2 at 24.] For this reason, the ALJ concluded that a less than a marked

---

[3] State agency consultant, William A. Shipley, Ph.D., affirmed this opinion in July 2023. [Filing No. 9-2 at 24.; Filing No. 9-3 at 12.]

limitation was more appropriate than no limitation at all. *See N.M.C. by AdeleMichelle A. C. v. Frank Bisignano Comm'r of Soc. Sec. Admin.*, No. 3:25-cv-00057, 2025 WL 3684237, at *3 (S.D. Ind. Dec. 19, 2025) ("Thus, not only did the ALJ consider and incorporate [the teacher's] assessment, the ALJ's conclusion that Claimant had less than a marked limitation was supported by information in [the teacher's] assessment."). LS' belief that Ms. Slaughter's questionnaire should have resulted in a marked limitation finding is nothing more than a request that the Court reweigh the evidence and reach a different conclusion than the ALJ. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (Courts cannot "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it").

The ALJ similarly considered Ms. Slaughter's notation that LS had a "slight problem to a serious problem"[4] in attending and completing tasks. [Filing No. 9-2 at 23.] The ALJ waded through evidence that LS had good days and bad days at school, a reality reflected in Slaughter's questionnaire and IEP notes. [Filing No. 9-2 at 23.] The ALJ also discussed treatment records regarding LS' medication use and its effectiveness. [Filing No. 9-2 at 23.] While some medication was described as having helped LS during school "at times," the ALJ noted "it was hard to assess the medication's effectiveness as there was poor compliance[.]" [Filing No. 9-2 at 23.] The most recent treatment notes from September 2023 "show[ed] . . . that [LS'] progress waxed and waned." [Filing No. 9-2 at 23.] Unlike the first domain, the ALJ did not diverge from the opinion of the state agency consultants, who concluded that LS had a less than a marked limitation in her ability to attend and complete tasks. [Filing No. 9-3 at 4.] While the ALJ could have been explicit about

---

[4] The questionnaire reflects that Ms. Slaughter indicated a slight problem to a *very* serious problem. *See* [Filing No 9-6 at 28.] LS does not address this discrepancy between the ALJ's summary and Ms. Slaughter's questionnaire. Thus, the Court will not engage with the implications of the ALJ's misstatement, as the argument is waived. *See Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011).

why LS had a less than a marked limitation in this area, she nonetheless demonstrated that she evaluated Ms. Slaughter's questionnaire and supported her conclusion with substantial evidence.

Like the previous two domains, the ALJ found that LS had a less than a marked limitation in interacting and relating with others. The ALJ considered medical records, school records, and Ms. Slaughter's comments about LS' aggressive behavior towards "herself, peers, staff, and the belongings of others." [Filing No. 9-2 at 23.] Ms. Slaughter recorded "no problem to a serious problem" in this domain. [Filing No. 9-6 at 29.] The ALJ explained that while these findings were "corroborated by school records," [Filing No. 9-2 at 23], there was evidence of recent positive interactions with others: LS mentioned having friends during therapy and "her teacher noted significant improvement in these behaviors when compared to the fall semester." [Filing No. 9-2 at 23; Filing No. 9-7 at 653.] Further, notes from November 2023 showed that LS "enjoyed being around other peers her age," despite not wanting to be in the classroom. [Filing No. 9-2 at 23.] Again, the agency consultants rated LS as having a "less than a marked" limitation in her ability to interact and relate with others. [Filing No. 9-3 at 4, 12.] While the ALJ acknowledged LS' issues in this domain, she also concluded LS was "no more than a less than a marked" limitation. [Filing No. 9-2 at 23.]

Last, the ALJ concluded that LS had a less than marked limitation in caring for herself. [Filing No. 9-2 at 23.] In her analysis, the ALJ acknowledged LS' noncompliance during therapy and instances of shoplifting. [Filing No. 9-2 at 24.] Additionally, the ALJ cited a Function Report submitted by LS' mother, which asserted that LS "could not button clothes, tie shoelaces, take a bath or shower, brush teeth, comb or brush hair, wash hair by herself, choose clothes, pick and put away toys, hang up clothes, help around the house, do what is told, obey rules, or accept criticism." [Filing No. 9-2 at 24.] However, LS' mother recorded elsewhere that LS could use a zipper, button

her clothes, eat by herself, and get to school on time. [Filing No. 9-2 at 24.] Once again, the agency consultants rated LS as having a "less than a marked" limitation in her ability to care for herself. [Filing No. 9-3 at 4, 12.] In support of her conclusion that LS was no more than less than limited in this area, the ALJ cited therapy treatment notes which described LS as well-groomed since the protective filing date. [Filing No. 9-2 at 24.] The ALJ also addressed Ms. Slaughter's questionnaire, which had indicated "no problem to a serious problem" in this domain. [Filing No. 9-6 at 31.] The ALJ implied that the usefulness of Ms. Slaughter's questionnaire was limited because her checkbox findings lacked an accompanying explanation. *See* [Filing No. 9-2 at 24] ("Additionally, while the claimant's third grade teacher found no problem to a serious problem in this area, she provided no details to support this finding[.]").

After analyzing LS' functioning in the preceding domains, the ALJ turned to the persuasiveness of medical and non-medical sources. A teacher questionnaire is a type of non-medical source. In evaluating a non-medical source, an ALJ is not required to specifically articulate how evidence from non-medical sources was considered using the requirements in 20 C.F.R. § 404.1520c(a)-(c). Notwithstanding this fact, the ALJ did not ignore or simply summarize Ms. Slaughter's questionnaire; she juxtaposed it with other evidence and provided a specific reason for being only "somewhat persua[ded]" by the questionnaire—the evidence "show[ed] that [LS] was not consistent with therapy or medications at [that] time." [Filing No. 9-2 at 24]; *cf Simmons ex rel. L.H. v. Berryhill*, No. 17-c-00065, 2018 WL 1138555, at*4 (N.D. Ill. Mar. 2, 2018) (remanding where, among other things, the ALJ overlooked several statements in the teacher questionnaires). The quality of the ALJ's explanation thus stands in stark contrast with cases in which remand was warranted. *See Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 940 (N.D. Ind. 2012) (remand was warranted because the ALJ did not consider evidence that supported a finding of disability,

9

including a teacher questionnaire from the claimant's special education teacher); *Smith ex rel. Q.D.S. v. Berryhill*, No. 3:17-cv-411, 2018 WL 3373507, at *3 (N.D. Ind. July 11, 2018) (noting that the ALJ failed to acknowledge a teacher questionnaire which indicated that the claimant had serious problems with certain activities); *Haste ex rel. P.M.B. v. Astrue*, No. 1:06-cv-0886, 2007 WL 3124477, at *7 (S.D. Ind. Sept. 20, 2007) (finding that the ALJ's failure to mention a teacher's report "cast[ed] serious doubt on the ultimate finding of no disability").

Because the Court is persuaded that the ALJ built a logical bridge between the evidence and her conclusions, the ALJ's decision denying LS benefits must be affirmed. *See M.M.M. ex rel. J.M.M. v. O'Malley,* No. 23-cv-2134, 2024 WL 4265201, at *4 (N.D. Ill. Sept. 23, 2024) ("The ALJ was only required to consider the teacher questionnaires along with the other relevant evidence, and the Court finds he did so.").

## IV.    Conclusion

For all these reasons, the ALJ's decision is **AFFIRMED**. Final judgment will issue by separate entry.


Date: 7/10/2026

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution**:

Eric Adam Farr
KELLER & KELLER
efarr@2keller.com

Jay Hinsley
SSA-Ogc
jay.hinsley@ssa.gov

Taehee Hwang
Social Security
Administration
taehee.hwang@ssa.gov

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov